ACCEPTED
04-15-00544-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/29/2015 2:33:32 PM
KEITH HOTTLE
CLERK

## CAUSE NO. 04-15-00544-CV

IN THE COURT OF APPEALS OF TEXAS
FOURTH JUDICIAL DISTRICT
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
10/29/2015 2:33:32 PM
KEITH E. HOTTLE
Clerk

**JUAN J. VILLARREAL**
**Appellant-defendant**

**vs.**

**ROBERTO JIMENEZ**
**Appellee-plaintiff**

**FROM THE 218TH JUDICIAL DISTRICT, FRIO COUNTY, TEXAS**
**CAUSE NO. 12-10-00348 CVF, HON. DONNA RAYES, PRESIDING**

# APPELLANT'S RESPONSE TO APPELLEE'S MOTION TO DISMISS FOR WANT OF JURISDICTION

RESPECTFULLY SUBMITTED,

PABLO V. BUSTAMANTE
SBN 03510760
719 S. St. Mary's St.
San Antonio, Texas 78205
Ph. No. 210-465-8555
Fax No. 210-465-8556
bustamantelaw@yahoo.com

**ATTORNEY FOR APPELLANT**

**APPELLANT JUAN VILLARREAL'S RESPONSE TO APPELLEE'S MOTION TO DISMISS FOR WANT OF JURISDICTION**

Now comes Juan J. Villarreal, Appellant, by and through his attorney of record, Pablo V. Bustamante, and files this his response and would show this Honorable Court as follows:

1.    **FACTS:**

The trial court stated June 11, 2015 would be the date to submit for entry the Order the court rendered on the trial on the merits in this case. On June 1, 2015, Defendant-Appellant filed a Motion for Reconsideration with the Court, a copy is attached hereto marked Exhibit "A", and incorporated herein for all purposes. Prior to June 11, 2015, Defendant-Appellant's Attorney of Record gave notice to the other attorneys on the case, Mr. Manuel Montes for Plaintiff-Appellee and Mr. Jeffrey Linick for Defendant Camilo Mendez that he was going to be late on June 11, 2015 since he had an MTR in the 186th Judicial District, Bexar County, Texas, and this would take about an hour, but had to be done.

By the time Defendant-appellant's attorney did get to Frio County District Court, he was informed the Court had entered the Order immediately after docket call, and that the attorney had left. I then discovered Mr. Montes was not there to present the judgment, nor wait for me so we could hear the Motion to Reconsider, because he had emergency Hip Replacement Surgery. Mr. John Patterson, his partner, had presented the judgment for entry.

As a result, therefore, the Court was informed about the Motion for Reconsideration. The court noted Mr. Patterson was no longer in the courtroom, and was not found anywhere in the building. The court requested I set the Motion for a Hearing. I set the Motion for Hearing for June 23, 2011. SEE exhibit "B" attached hereto and incorporated herein for all purposes.

On June 23, 2015, Mr. Montes was still out due to the surgery, and Mr. Michael Zamora, associate, was present as was Mr. Linick, Attorney for Mr. Mendez. I am attaching a copy of the transcript of such hearing, marked exhibit "C" and incorporated herein for all purposes.

Exhibit "C" reflects the hearing whereby the Court heard my Motion for Reconsideration, read such motion and took into consideration the case law therein stated, and while declaring a render of judgment could be forthcoming for Defendant-Appellant, all of us, including the Court agreed that due to Mr. Montes' surgery and inability to be there, it would likely be more fair to have him be able to respond. Therefore, the Court, on her own motion, declared this to be a Motion for a New Trial, and so entered it.

Thereafter, through the next three (3) settings, we were unable to enter the Order for a New Trial initially due to forthcoming Objections by the plaintiff-appellee, then a different circuit judge who did not have knowledge of the case, and When the Court finally did hear the objections filed by the Plaintiff-Appellee, the Court declared we had not filed a motion for a new trial and denied any further orders. This occurred on August 27, 2015. The Defendant-Appellant thereafter on September 1, 2015, filed notice of appeal.

2.     The defendant-appellant would show this Court the matter before the trial court, a Motion for Reconsideration, was set by the Court to be heard on June 23, 2015, and still within the plenary jurisdiction of the Trial Court, in fact, amounted to a motion that would certainly modify, correct or reform the judgment, which would necessarily extend the trial court's jurisdiction over its own judgment up to an additional seventy-five (75) days, depending on when and where the court acts on the motion, or motions, *Lane Bank Equipment Co. V Smith Southern Equipment, Inc., 10 S.W. 3d 308 (Tex. 2000)*.

3. The trial court itself stated it had plenary jurisdiction to declare the action a Motion for a New Trial, which it did, and entered an Order thereon of a New Trial. SEE, Motion for a New Trial transcript marked Exhibit "C" page 15, lines 20-22, attached hereto and incorporated herein for all purposes.

4. A motion to modify is a motion that would result in a "substantive change" in the trial court's existing Order, Rule 329 (b)(g) Texas Rules of Appellate Procedure. The Motion for Reconsideration the Court heard, by its own request, on June 23, 2015, within the thirty days after entering judgment, is certainly within the requirements requesting a "substantive change" in the trial court's order.

Wherefore, defendant-appellant Juan J. Villarreal, hereby requests this Court take into consideration all of the foregoing and render his appeal is valid and proper, within the jurisdiction of the Court, and allow him to proceed hence without day.

Defendant-appellant prays for general relief.

**RESPECTFULLY SUBMITTED,**

Bustamante Law Office
719 S. St. Mary's St.
San Antonio, Texas 78205
Ph. No. 210-465-8555
Fax No. 210-465-8556
bustamantelaw@yahoo.com

_____
Pablo V. Bustamante
SBN 03510760

ATTORNEY FOR DEFENDANT-
APPELLANT

## CERTIFICATE OF SERVICE

I certify that on this day, October 29, 2015 a true and correct copy of the foregoing was mailed, certified mail, to Mr. Manuel Montes, Attorney at law, at his address as follows:

Mr. Manuel Montes
MONTEZ & PATTERSON
6800 Park Ten Blvd. Ste. 220N
San Antonio, Texas 78213

_____
Pablo V. Bustamante

EXHIBIT "A"

**Cause No. 12-10-00348CVF**

| | |
|---|---|
| ROBERTO JIMENEZ | IN THE DISTRICT COURT |
| VS | 218TH JUDICIAL DISTRICT |
| CAMILO MENDEZ, INDIVIDUALLY AND DBA CAMILO MENDEZ AUTO BODY AND PAINT, AND JUAN J. VILLARREAL | FRIO COUNTY, TEXAS |

## MOTION FOR RECONSIDERATION

**TO THE HONORABLE JUDGE:**

Now comes Juan J. Villarreal, defendant in the above styled cause, and files this his Motion for Reconsideration, showing the court as follows:

1.      This case was heard by this Court on April 9, 2015, and the court, after hearing and argument determined, as to Juan J. Villarreal, that he did not have a proper Affirmative Defense, and the fact he had purchased this property (vehicle) and was an innocent purchaser of value under the Texas Business and Commerce Code, The Uniform Commercial Code, chapter 2, that, in fact, the facts in this case were governed by the Texas Transportation Code, Section 500, the Certificate of Title Act.

2.      As a matter of statutory construction, two or more separate statutes are in pari materia when they pertain to the same subject matter or have a similar purpose. *Howlett v. Tarrant County*, 301 S. W.3d 840, 846 (Tex. App.- Ft. Worth 2009, pet. denied); *Johnson v. City of Dublin*, 46 S.W.3d 401, 408 (Tex. App.- Eastland 2001, pet. denied); *In re State ex rel Connell*, 976 S.W. 2d 906 (Tex.App.- Dallas 1998, orig. proceeding), even it they do not explicitly refer to each other, or if they were passed at different times. *Cadle Co. v Butler*, 951 S.W. 2d 901, 907 (Tex. App. - Corpus Christi 1997, no pet.) In such cases, courts are

supposed to construe the related cases in harmony. *Calvert v Fort Worth Nat'l Bank*, 356 S.W. 2d 918, 921 (Tex.1962); *DLB Architects, P.C. v Weaver*, 305 S.W. 3d 407, 410 (Tex.App-Dallas 2010, pet. denied); *Lenhard v Butler*, 745 S. W. 2d 101, 105 (Tex.App.-Fort Worth 1988, writ denied).

3.      The Texas Supreme Court specifically held that the UCC and the Certificate of Title Act were in pari materia, and should be construed together. *Associates Discount Corp. V Rattan Chevrolet*, Inc. 462 S.W.2d 546, 549 (Tex.1970); accord, *IDS Leasing Corp v Leasing Associates, Inc.*, 590 S.W.2d 607, 611-12 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.).

Accordingly, Courts often consider the UCC and Certificate of Title together. SEE, e.g., *First National Bank of El Campo, Tex. V Buss*, 143 S.W.3d 915, 920-24 ( Tex.App.-Corpus Christi 2004, pet. denied); *Bruckner Truck Sales, Inc. v Farm Credit Leasing Svcs. Corp.* 909 S.W. 2d 75, 80-81 (Tex. App. - Amarillo 1995 no writ).

4.      The Certificate of Title Act provides that, in the event of a conflict between the UCC and the Certificate of Title, the UCC controls. Tex. Transportation Code Section 501.005; *Nxcess Motor Cars, Inc. v. JP Morgan Chase Bank*, N.A. 317 S.W. 3d 462, 469-70 (Tex.App.-Houston [1st Dist.] 2010, pet. denied).

WHEREFORE, based on the foregoing, Juan J. Villarreal requests this Court reconsider his affirmative defense, and RENDER/GRANT to him the vehicle in question which the evidence showed, by a preponderance of the evidence, that he was a purchaser in good faith under the Texas Business and Commerce Code, The Uniform Commercial Code chapter 2, which governs over any conflicts with the Certificate of Title Act under the Texas Transportation Code.

Juan J. Villarreal prays for general relief.

RESPECTFULLY SUBMITTED,

Bustamante Law Office
719 S. St. Mary's St.
San Antonio, Texas 78205
Ph. No. 210-465-8555
Fax No. 210-465-8556

_____
Pablo V. Bustamante
SBN 03510760

ATTORNEY FOR JUAN. J. VILLARREAL

## CERTIFICATE OF SERVICE

I have this day produced a copy of the foregoing to the attorneys in the case, Mr. Manuel Montes, fax number (210) 736-1689, and Mr. Jeffrey Linick at 9257 Somerset Road, #2303 in San Antonio, Texas 78211.

_____
Pablo V. Bustamante

EXHIBIT "B"

# BUSTAMANTE LAW OFFICE

**PABLO V. BUSTAMANTE**
**ATTORNEY AT LAW**

719 S. St. Mary's St.
San Antonio, Texas 78205
Phone: (210) 465-8555
Fax: (210) 465-8556
bustamantelaw@yahoo.com

June 16, 2015

**CERTIFIED MAIL VIA**
Mr. Manuel Montez
Attorney at law
San Antonio, Texas

**MAILED**
06-16-15
MGarcia

**VIA CERTIFIED MAIL**
Mr. Jeffrey Linick
Attorney at law
San Antonio, Texas

> Re:     Jimenez v Mendez, Juan Villarreal
>         Frio County District Court
>
>         Motion for Reconsideration
>         Set for June 23, 2015
>         9 AM, District Courtroom

Gentlemen:

The Court requested this Motion for Reconsideration should be set for hearing. I have received a hearing date from the Court Coordinator, Heather, for June 23, 2015 at 9 AM in the Frio County Courthouse, Pearsall, Texas.

Thank you for your courtesy.

Very truly yours,

Pablo V. Bustamante
COPY



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $  $3.45 |
| Certified Fee | $2.80 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | N/A |
| Total Postage & Fees | $ |

Postmark Here
09
2015

Sent To   Mr. Manuel Montez
Montez & Patterson
Street, Apt. or PO Box   6800 Park Ten Blvd., Ste. 220 North
City, State,   San Antonio, Texas 78213

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Mr. Manuel Montez
Montez & Patterson
6800 Park Ten Blvd., Ste. 220 North
San Antonio, Texas 78213

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  ☒ Agent
                            ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
   GAVI Rodriguez   10|8|15

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail®        ☐ Priority Mail Express™
   ☐ Registered            ☐ Return Receipt for Merchandise
   ☐ Insured Mail          ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)

7014 2200 0000 9201 5446

PS Form 3811, July 2013          Domestic Return Receipt

UNITED STATES POSTAL SERVICE

TX 780

18 JUN '15

PM 2 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

**BUSTAMANTE LAW OFFICE**
**719 S. St. Mary's St.**
**San Antonio, Texas 78205**

Villarreal

05343419

# BUSTAMANTE LAW OFFICE

PABLO V. BUSTAMANTE
ATTORNEY AT LAW

719 S. St. Mary's St.
San Antonio, Texas 78205
Phone: (210) 465-8555
Fax: (210) 465-8556
bustamantelaw@yahoo.com

June 16, 2015

CERTIFIED MAIL VIA
Mr. Manuel Montez
Attorney at law
San Antonio, Texas

VIA CERTIFIED MAIL
Mr. Jeffrey Linick
Attorney at law
San Antonio, Texas

  Re: Jimenez v Mendez, Juan Villarreal
    Frio County District Court

    Motion for Reconsideration
    Set for June 23, 2015
    9 AM, District Courtroom

Gentlemen:

  The Court requested this Motion for Reconsideration should be set for hearing. I have received a hearing date from the Court Coordinator, Heather, for June 23, 2015 at 9 AM in the Frio County Courthouse, Pearsall, Texas.

  Thank you for your courtesy.

Very truly yours,

Pablo V. Bustamante



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

| | | |
|---|---|---|
| Postage | $3.45 | |
| Certified Fee | $2.80 | Postmark Here |
| Return Receipt Fee (Endorsement Required) | $0.00 | |
| Restricted Delivery Fee (Endorsement Required) | N/A | |
| Total Postage | $0.49 | 06/16/2015 |

Sent To: Mr. Jeffrey Linick
Attorney at Law
Street, Apt. No. 9257 Somerset Rd. #2303
or PO Box No
City, State, ZIP San Antonio, Texas 78041

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Jeffrey Linick
Attorney at Law
9257 Somerset Rd. #2303
San Antonio, Texas 78061

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Jeffry Linick*
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
X *Jeffrey Linick*

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☒ Certified Mail®    ☐ Priority Mail Express™
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)

7014 1200 0000 9201 5439

PS Form 3811, July 2013    Domestic Return Receipt

SAN ANTONIO

UNITED STATES POSTAL SERVICE

27 JUN '15

PM 3 L



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

**BUSTAMANTE LAW OFFICE**
**719 S. St. Mary's St.**
**San Antonio, Texas 78205**

i205343419

EXHIBIT "C"

REPORTER'S RECORD
VOLUME 3 OF 4 VOLUMES
TRIAL COURT CAUSE NO. 12-10-0348-CVF

ROBERTO JIMENEZ,          ) IN THE DISTRICT COURT
    Plaintiff             )
                          )
                          )
                          )
VS.                       ) OF FRIO COUNTY, TEXAS
                          )
                          )
                          )
CAMILO MENDEZ,            )
INDIVIDUALLY AND DBA AS   ) 81ST/218TH JUDICIAL
CAMILO MENDEZ AUTO BODY   ) DISTRICT
AND PAINT, AND JUAN       )
VILLARREAL, INDIVIDUALLY, )
    Defendants

-------------------------------

MOTION FOR NEW TRIAL

-------------------------------

On June 23, 2015, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Donna S. Rayes, Judge presiding, held in Pearsall, Frio County, Texas;

Proceedings reported by oral stenography.

A P P E A R A N C E S


Mr. Michael Zamora
Attorney at Law
SBOT NO: 24072567
Montez & Patterson
6800 Park Ten Blvd Suite 220 North
San Antonio, TX 78213
FOR THE PLAINTIFF


Mr. Pablo Bustamante
Attorney at Law
Bustamante Law Office
SBOT NO: 03510760
719 S Saint Marys St
San Antonio, TX 78205-3434
THE DEFENDANT JUAN VILLARREAL


Mr. Jeffrey Linick
Attorney at Law
SBOT NO: 24072211
San Antonio, Texas
FOR THE DEFENDANT CAMILO MENDEZ

THE COURT: Recalling 12-10-348, Roberto Jimenez versus Camilo Mendez, Individually, Camilo Mendez Auto Body and Paint, and Juan Villarreal. Do we have Mr. Linick in this as well?

MR. BUSTAMANTE: He is in agreement with me but it's not part -- it's not going to affect him one way or the other, Judge by what we have. What I filed Judge, in May, I filed a Motion for Reconsideration with the Court to entertain Juan Villarreal's position. The Court stated or the evidence showed clearly that Roberto Jimenez had no relationship with Juan Villarreal; didn't know him, didn't know anything about the transaction, and the evidence thereafter after becoming --

THE COURT: Hang on just a minute. The last thing that I see in the file is Judgment and Decree Setting Aside Certificates, which it was filed stamped June 11th. So we're well within our time. But did you file something? I don't see --

MR. BUSTAMANTE: I filed a Motion For Reconsideration with the Court, Judge.

THE COURT: You know what? I want to take a recess. I really can't deal with not having things in the file.

(Recess)

THE COURT: Okay. Back on the record in

12-10-348, Roberto Jimenez versus Camilo Mendez.

MR. Bustamante, they don't have anything that you filed.

MR. BUSTAMANTE: Judge, we filed it through the e-files.

THE COURT: Through e-file?

MR. BUSTAMANTE: Through e-file, like they told us we were suppose to have done.

THE COURT: All right. So what happens when they e-file?

THE CLERK: We accept it and send them a copy. When we accept it, it goes straight to the file and all we do is print it out.

THE COURT: You print a hard copy?

THE CLERK: We print a hard copy for the file, uh-huh.

THE COURT: Well, that didn't happen in this one.

THE CLERK: There was no pleading in there for it so it's not in the file. We never received it.

MR. BUSTAMANTE: Well, all I know is --

THE COURT: Well evidently, we have a breakdown in our system. Let's try to figure out what the breakdown is.

MR. BUSTAMANTE: We filed it. I'm not

sure, Judge -- I'll tell the Court plainly, I'm on my way to Carrizo for an adoption hearing and I forgot all my main folder. Thank God, I had these in my other file because I'm reading them. I don't have anything more than what I gave to the Court.

THE COURT: You want to look at this and tell me what it says?

MR. BUSTAMANTE: That's how I am too, Judge.

THE COURT: Tell me how that's suppose to work, I guess.

THE CLERK: These are the things telling us what they want done. This motion has no plea for this motion. It shows everything they have filed, and that opens. It wasn't sent. The status -- see here is the status.

THE COURT: Okay, well, if it wasn't sent --

THE CLERK: Then we don't have it.

THE COURT: -- then you don't have it.

MR. LINICK: Something gets submitted but not sent is the question.

THE CLERK: Yes.

MR. BUSTAMANTE: How did we come to that and not send it?

THE CLERK: It doesn't even have our stamp on it. It should have our stamp up here.

THE COURT: This piece of paper?

THE CLERK: It just explains what he was going to do. He was going to file into the case and this tells everything that he was going to do. It lists the fees. It actually tells us what to do. It was never even approved.

THE COURT: So from his computer he pulls up --

THE CLERK -- the file, the case.

THE COURT: Pulls it up.

THE CLERK: And then says what he wants to file into it. There was never approval, so we never got it. Once we get this right here and we accept it, it says 'approved'.

THE COURT: All righty then. Well --

MR. BUSTAMANTE: I have no idea how that works, Judge. I don't know nothing about it. My office is the one that does it. We were under the impression that it was filed. We contacted the attorneys and I sent them copies of the same thing, and at the time I had a hearing -- for the June 11th date I had a hearing in the morning in San Antonio and I contacted the lawyers that I was going to be here about 11-11:30 if

they could just wait because of my Motion for Reconsideration, which I had also sent by mail.

THE COURT: To them.

MR. BUSTAMANTE: That's right to them, and then when we got here, remember the order had been signed and you said, well, file it for another setting.

THE COURT: I'll consider this your oral Motion to Reconsider. How is that?

MR. BUSTAMANTE: Very good, Judge.

THE COURT: Okay. Do you have a copy of your oral motion for me to look at?

MR. BUSTAMANTE: Yes, I have it. And here is the filing thing, Judge.

THE COURT: Yep, there it is. So there's some breakdown in the system.

MR. LINICK: When you're filing in an existing case, it's enormously complicated. I've had my own experience as trying to do that.

THE CLERK: We're suppose to have it but as you can see, there's no--

MR. LINICK: Especially when the original case wasn't itself e-filed, there's a whole complicated mess with it.

THE COURT: Yes, I think LGS we need to jump on them about it.

MR. BUSTAMANTE: I have no idea how that works at all, Judge.

THE COURT: Me neither.

MR. BUSTAMANTE: Here's my main phone. It will tell you everything.

THE COURT: All right, so it has been filed and here it is.

MR. BUSTAMANTE: It has been filed, Judge. The Court at that time stated, Judge, that the Transportation Code, the Certificate of Title Act governed and we were going under the UCC.

THE COURT: Right, I remember that.

MR. BUSTAMANTE: And I didn't have my case law at that time so we didn't do anything about it. Later on in researching the cases we find that in fact, the UCC governs, even based on the Certificate of Title Act. Certificate of Title Act 501.005 says point blank "if there's a conflict between Certificate of Title and UCC, UCC governs." And because of that, Judge, and the fact that that has been upheld by the Supreme Court in numerous cases, we're asking the Court to reconsider on Juan Villarreal's request to keep the car that he purchased and was an innocent purchaser. Once he verified that the bank, in fact, had loaned money on the title he then himself purchased the car without any

other pretenses or anything whatsoever, except an innocent purchaser. We're asking the Court to give us that consideration.

THE COURT: All right. Your response?

MR. ZAMORA: Your Honor, I'm here covering for Mr. Montez. Michael Zamora. I wasn't here, Your Honor, to hear the evidence or the Court's oral ruling but I don't think that Mr. Bustamante's client was an innocent purchaser and any recourse would be through Mr. Mendez, which I don't think there was any evidence or any rulings regarding him.

THE COURT: I don't recall everything about this, unfortunately, but tell me why -- well, do you have any disagreement that the UCC controls over the --

MR. BUSTAMANTE: Certificate of Title --

THE COURT: -- Certificate of Title Act?

MR. ZAMORA: I have not researched the law, Your Honor.

THE COURT: Okay, tell me then Mr. Bustamante, what makes the UCC -- what in the UCC causes your client to win?

MR. BUSTAMANTE: Judge, we submitted this to the Court in our motions. The UCC -- and I'm offering to the Court the specific section of the UCC, Section 2, which states "a bona fide purchaser for value

keeps his own title, keeps his title. He has not done anything wrong except purchase a vehicle or a title from somebody that had title, even to the extent that the person may have voidable title." And in this case, we had every reason to believe Mr. Mendez had title. He showed us the title. He took a loan out with the bank on that title, and therefore, when we bought the car, we bought the car thinking and knowing that he had title to the vehicle. And again, I apologize to the Court but there are numerous cases that I had regarding the UCC section pertaining to vehicles and bona fide purchasers of value.

The reason I mention Your Honor, the fact of the bank, et cetera, is because the only defense to a UCC bona fide purchaser for value is fraud, and nothing at all ever came of any testimony pertaining to any fraud or any collusion of any sort that would render any fraud to be involved or to be thought of in any way whatsoever.

THE COURT: So my problem is what title -- all right, give me just a brief synopsis of this. Roberto Jimenez was the original owner of the car, correct?

MR. BUSTAMANTE: Right, yes, Your Honor.

THE COURT: And Camilo Mendez was the man

that was suppose to paint it.

MR. BUSTAMANTE: Yes, that is true.

THE COURT: And Juan Villarreal is the man who bought the car from Camilo Mendez.

MR. BUSTAMANTE: Right, Your Honor, exactly.

THE COURT: I think my problem might be that what is the title that Camilo Mendez had, because his title was defective because of failure to comply with the --

MR. LINICK: Well, he did receive a title. It might ultimately be deemed to be ineffective by operation of law and I think it is pretty much undisputed the process by which he obtained the mechanic's lien was fatally flawed but I guess from the standpoint of whoever ultimately purchased it, I don't think that would change their status as being a bona fide good faith purchaser.

THE COURT: So your argument would be, Mr. Bustamante, is that Mr. Mendez was a person with voidable title and therefore --

MR. BUSTAMANTE: He could have been, Judge. The only thing we knew when we purchased the car was that he had real title, and the way my client checked that out and testified to it was that there was a loan

to Mr. Mendez from a bank on that note -- on that title, and once he confirmed and verified that the bank had loaned him money on the title to this car, he figured he owned the car and therefore, purchased it from him. So that he knew nothing about the fact that there was a problem with the title. That came out in testimony. What he later found out was that there was in fact, a dispute between the other parties that involved him once they filed the lawsuit. And so we've kept the car. Throughout all this time, Judge, we've maintained the vehicle. We've repaired the vehicle. We've put in over $8,000 into the vehicle, a vehicle that is not valued at more than 3 or $4,000, and kept it and maintained it and just to see what was going to happen with the Court without us doing anything about it. But basically, because he bought a vehicle that he thought that he was free to buy. At that time that he bought it we had no idea that the title was voidable or that there was a problem with it. The only way he could check it out, as he testified from the stand here, was by trying to find out if this man had real title and when he found out there was a bank loan on it, he contacted the bank. The bank said, "Yes, we loaned money on that title." He figured it was a good title.

MR. LINICK: I think that characterization

is accurate. The title would be voidable but not void.

THE COURT: So under the UCC, the UCC does govern it and it appears that it does unless there is -- unless he had some notice, which I think just because he was a -- I'm thinking you may be a winner here today, Mr. Bustamante, although I really hate not to give Mr. Montez the opportunity -- I don't know if he's going to be back to address this before I lose jurisdiction.

MR. ZAMORA: It sounds like Your Honor, what Mr. Bustamante's client's issue is, is damages, and damages weren't pled by him. I mean, if he put money into the car and all that, I mean, he may be entitled to re-coop that from Mr. Mendez but --

MR. BUSTAMANTE: The only thing that reflects, Judge was --

THE COURT: That was one of my problems with this case. Everybody wanted the car and nobody wanted damages, and I would have been inclined to give somebody damages but nobody wanted it or asked for it.

MR. BUSTAMANTE: The only reason that damages came up, Judge, was for the purposes of showing that it was our car. I mean, we're going to take care of it. We're going to fix it. It needed a ton of repairs and we did fix it and got it to working but always because we thought it was our car. See, we

bought the car in February or January and the lawsuit didn't occur until November or October of that year. In the meantime, we never thought that there was a problem with the title to that vehicle. And that came out in testimony.

MR. LINICK: My recollection of the testimony is, even my own client was, to some extent, surprised that his title wasn't good. I don't think there would have been any way Mr. Bustamante's client would have any way of knowing unless he himself took it upon himself to go and investigate the process by which the mechanic's lien was obtained.

THE COURT: Who has the car?

MR. BUSTAMANTE: We have the car, Judge. We've always taken care of it. The car is in as good of condition as it can be. As we stated at that time and we showed, Mr. Villarreal is a very, very good citizen of the community, Judge. We have no record. He's a hard working man. He has got a business. Always has been. We don't have a problem with who we are.

THE COURT: Okay, what I --

MR. ZAMORA: Your Honor, it was always my understanding that a Motion for Reconsideration would be based on the fact that there are new facts or new evidence or new law or a change in the law, and that's

not what they have here. He's arguing a Motion for New Trial basically.

THE COURT: You really -- well, I want to put this in a posture where Mr. Montez can come back and respond and so I want to --

MR. BUSTAMANTE: Judge, I would even go this far. I would say that if the Judge wants to put everything in abeyance, we can stay it until he does come back and we come forth with motions as we have them. My point being, the testimony that was given reflects only one thing, and that's what we have shown with my client, and the Court at that time thought Certificate of Title was the only thing that governed.

THE COURT: Usually, the more specific statute controls over the more general. I guess that's not the case here.

MR. BUSTAMANTE: And the Supreme Court and the Certificate of Title Act itself says point blank that UCC governs any conflicts.

THE COURT: I'm going to consider this as a Motion for New Trial and I'm granting it, which I can even do on my own motion. And I'm granting a new trial.

MR. BUSTAMANTE: And then we'll come back. That's fine, Judge. I don't have any problem with that.

THE COURT: So if you will do an order to

that effect.

MR. BUSTAMANTE: I will.

THE COURT: We are glad that you have brought to our attention the issues that we have with e-filing.

MR. BUSTAMANTE: And thank God that we had that thing that had the thing up there.

MR. LINICK: Receipt.

MR. BUSTAMANTE: Yeah, receipt.

THE COURT: I'm just going to give this a date just so we don't lose it. I'm going to give you a date for entry of your motion -- of your order granting new trial but you can just circulate it and you don't actually have to come if everybody is on board with it. So that date would be July 14th.

MR. BUSTAMANTE: Thank you, Judge, very much.

THE COURT: All right, thank you.

[End of hearing]

REPORTER'S CERTIFICATE

THE STATE OF TEXAS    )
COUNTY OF FRIO        )

I, Richey Gentry, Official Court Reporter in and for the 81st District Court of Frio County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

GIVEN UNDER MY HAND AND SEAL OF OFFICE on this October 20, 2015.

\s\Richey Gentry
Richey Gentry, Texas CSR 4341
Expiration Date:  12/31/2015
Official Court Reporter
81st District Court
Frio County, Texas
Pearsall, Texas